UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MANUEL TRINIDAD-ACOSTA, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | No. 1:11-cr-00205-JAW-1 |
| ) | No. 1:15-cv-00366-JAW |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent ) | |

**RECOMMENDED DECISION ON PETITIONER'S
MOTION PURSUANT TO 28 U.S.C. § 2255**

In this action, Petitioner Manuel Trinidad-Acosta moves, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. (Motion, ECF No. 880.) Following a jury trial, Petitioner was convicted of conspiracy to possess with intent to distribute cocaine and 28 grams or more of cocaine base, pursuant to 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B); and of possession of a firearm in furtherance of a drug trafficking crime, pursuant to 18 U.S.C. § 924(c)(1)(A)(i). (Judgment, ECF No. 489 at 1-2.) The Court sentenced him to 180 months in prison on the possession charge and to 60 months on the firearm charge, with the sentences to be served consecutively, followed by four years of supervised release on each count, to be served concurrently. (Judgment at 1-2.) The First Circuit upheld the sentence on appeal. *United States v. Trinidad-Acosta*, 773 F.3d 298 (1st Cir. 2014), *cert. denied sub nom. Cogswell v. United States*, 135 S. Ct. 1867 (2015).

Petitioner's section 2255 motion was filed timely. (Motion at 1.) Petitioner asserts four grounds for relief. First, he contends that he was denied due process and that he received ineffective assistance of counsel regarding counsel's alleged failure to investigate and impeach at trial perjured testimony that allegedly affected the drug amount attributed to Petitioner.

(Attachment to Motion, ECF No. 880-1 at 4-5.)  Second, Petitioner contends he was penalized, in violation of his Sixth Amendment rights, because he went to trial rather than plead guilty.  (*Id.* at 5.)  Third, Petitioner contends that counsel provided ineffective assistance at sentencing because counsel failed to argue for a downward departure on the basis that Petitioner is a deportable alien.  (*Id.* at 7.)  Fourth, Petitioner contends that there was insufficient evidence to support the firearm conviction.  (*Id.* at 8.)

The Government has moved for summary dismissal.  (Response, ECF No. 887.)

Following a review of Petitioner's motion and the Government's request for dismissal, I recommend the Court grant the Government's request, and dismiss Petitioner's motion.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In November 2011, Petitioner and three others were indicted for conspiring to distribute and to possess with intent to distribute cocaine and cocaine base between September 2010 and approximately November 3, 2011 (Count 1).  Petitioner was also indicted for possession of a 9mm pistol in furtherance of the drug trafficking crime alleged in Count 1.  (Indictment, ECF No. 40.)

Petitioner's first counsel was appointed in December 2011, Petitioner was arraigned, and he pled not guilty.  (Minute Entry, ECF No. 65.)  In January 2012, the Government filed a superseding indictment, which named additional co-defendants on the conspiracy charge and added counts against defendants other than Petitioner.  (Superseding Indictment, ECF No. 81 at 1-3.)  In February 2012, Petitioner filed a motion to appoint new counsel; the Court granted the motion, and Petitioner's second appointed counsel represented him through the January 2013 trial and the notice of appeal.  (Motion, ECF No. 151; Order, ECF No. 156; Notice of Appeal, ECF No. 499.)

At Petitioner's sentencing hearing in June 2013, the Court made the following sentencing guidelines calculations: The Court held Petitioner accountable for 4.9 kilograms of cocaine base, which resulted in a base offense level of 36. (Sentencing Tr., ECF No. 597 at 48.) A two-level increase was added, pursuant to U.S.S.G. § 2D1.1(b)(12), because Petitioner maintained a premises to facilitate the distribution of a controlled substance. (*Id.*) Petitioner's criminal history category was I, which, combined with a total offense level of 38, yielded a sentencing guideline range of 235 to 293 months. (*Id.*) The Court noted that, pursuant to U.S.S.G. § 2K2.4, Comment 2(A), the 60-month prison term on the firearm charge runs consecutively to the sentence imposed on the conspiracy charge, and, therefore, the applicable guideline range was 295 to 353 months. (*Id.*)

The Court then considered each of the factors set forth in 18 U.S.C. § 3553(a), focusing on "[Petitioner's] past, his age, his roles in the conspiracy, and the need for punishment." *Trinidad-Acosta*, 773 F.3d at 310. (Sentencing Tr. at 49-55.) The Court imposed a 240-month total sentence, which was 55 months below the low end of the guidelines range. (Sentencing Tr. at 56.) The Court's reason for the downward departure was that the guidelines range for the total sentence was "too harsh." (*Id.* at 55.)

On appeal, Petitioner argued two issues: (1) that the Court erred when it denied his motion for a mistrial, and (2) that the sentence was unreasonable. *Trinidad-Acosta*, 773 F.3d at 305-10. Petitioner has not raised the mistrial issue in his section 2255 motion.[1] On the sentencing issue, the First Circuit discussed Petitioner's burden to demonstrate that the sentence was unreasonable,

---

[1] The motion for a mistrial was based on identification testimony at trial. *United States v. Trinidad-Acosta*, 773 F.3d 298, 305 (1st Cir. 2014). Defense counsel asked a witness on cross-examination whether she could identify Petitioner more easily than his co-defendant because Petitioner was "the only dark-skinned person in the courtroom." *Id.* The witness responded that she could identify Petitioner more easily "because '[s]he walk[s] past him every day. [She is] in jail with him.'" *Id.* The First Circuit held that "[c]onsidering the totality of the circumstances, we conclude that [Petitioner] has not shown that [the witness's] comment constituted clear prejudice that would render the district court's denial of his request for a mistrial a manifest abuse of discretion." *Id.* at 308.

given that it was below the applicable advisory range. *Id.* at 309. "'It is a rare below-the-range sentence that will prove vulnerable to a defendant's claim of substantive unreasonableness.'" *Id.* (quoting *United States v. Merritt*, 755 F.3d 6, 12 (1st Cir. 2014).

> Trinidad has not carried his burden. The district court carefully considered all relevant factors and explained in detail the basis for its conclusion that Trinidad was not a "soldier" or a "low-level peddler," as he claimed to be. The district court emphasized that Trinidad had three major roles in the conspiracy, consisting of: (1) "watch[ing] the drugs coming in and out and watch[ing] other people with the drugs" (the "Babysitter Role"); (2) actual drug dealing; and (3) depositing the drug proceeds in Cabrera's bank account (the "Depositor Role"). It noted that the Depositor Role was a "pretty significant role" that put him in a different level than simply an "outside soldier." The district court also noted that Trinidad carried a gun in furtherance of the conspiracy, which also put him in a category different from that of other lower-level conspirators.
>
> Trinidad tries to minimize his Depositor Role and his carrying of a gun by arguing that he sometimes required help at the bank due to his lack of proficiency in English, that the conspiracy leaders viewed him as dispensable since he was required to go into the open with large sums of money, and that the reason for getting the gun was "opaque." However, Trinidad's different view about the significance of his roles does not mean that the district court's view was unreasonable.

*Id.* at 309–10. The First Circuit affirmed the sentence. *Id.* at 310.

## II. DISCUSSION

### A. Legal Standards

A person may move to vacate his or her sentence on one of four different grounds: (1) "that the sentence was imposed in violation of the Constitution or laws of the United States"; (2) "that the court was without jurisdiction" to impose its sentence; (3) "that the sentence was in excess of the maximum authorized by law"; or (4) that the sentence "is otherwise subject to collateral attack." 28 U.S.C. § 2255(a); *see Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994).

A section 2255 petitioner has the burden to establish by a preponderance of the evidence that he or she is entitled to section 2255 relief. *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998); *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). When "a petition for federal

4

habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

A collateral challenge is not a substitute for an appeal. *United States v. Frady*, 456 U.S. 152, 165 (1982); *Berthoff v. United States*, 308 F.3d 124, 127 (1st Cir. 2002). "Accordingly, a defendant's failure to raise a claim in a timely manner at trial or on appeal constitutes a procedural default that bars collateral review, unless the defendant can demonstrate cause for the failure and prejudice or actual innocence." *Berthoff*, 308 F.3d at 127-28. Procedural default is an affirmative defense. *Sotirion v. United States*, 617 F.3d 27, 32 (1st Cir. 2010). The First Circuit has recognized that "federal courts have the authority to consider procedural default *sua sponte*." *Rosenthal v. O'Brien,* 713 F.3d 676, 683 (1st Cir. 2013) (citing, *inter alia*, *Brewer v. Marshall*, 119 F.3d 993, 999 (1st Cir. 1997)); *see also Daniels v. United States*, 532 U.S. 374, 382-83 (2001) (recognizing that "procedural default rules developed in the habeas corpus context apply in § 2255 cases") (citing *Frady*, 456 U.S. at 167-68).

An allegation of ineffective assistance of counsel can excuse a procedural default, but only if the petitioner demonstrates both that counsel's representation fell below an objective standard of reasonableness and that counsel's deficient performance prejudiced the petitioner's defense. *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (citing *Strickland v. Washington*, 466 U.S. 668, 688 (1984)); *Owens v. United States*, 483 F.3d 48, 63 (1st Cir. 2007). A district court reviewing a claim of ineffective assistance of counsel need not address both prongs of the test because a failure to meet either prong will undermine the claim. *Strickland*, 466 U.S. at 697. If a petitioner's "claims fail on the merits, his related claims that counsel rendered ineffective

assistance in failing to press the claims at trial or on appeal must also fail." *Tse v. United States*, 290 F.3d 462, 465 (1st Cir. 2002).

"Evidentiary hearings on § 2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted. An evidentiary hearing 'is not necessary when a [§] 2255 petition (1) is inadequate on its face, or (2) although facially adequate, is conclusively refuted as to the alleged facts by the files and records of the case.'" *Moreno-Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003) (citation omitted) (quoting *DiCarlo*, 575 F.2d at 954 (quotation marks omitted)). In determining whether an evidentiary hearing is required, the court must "take as true the sworn allegations of fact set forth in the petition 'unless those allegations are merely conclusory, contradicted by the record, or inherently incredible.'" *Owens*, 483 F.3d at 57 (quoting *Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002)). Summary dismissal of a motion is permitted when the allegations are "'vague, conclusory, or palpably incredible,'" even "'if the record does not conclusively and expressly belie [the] claim.'" *David*, 134 F.3d at 478 (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). The Court can reasonably require a petitioner to supply the Court with salient details of the claim prior to permitting discovery or a hearing. *Id.* (holding that "the district court did not abuse its discretion in refusing to license a fishing expedition").

### B. Claims and Analysis

#### 1. Claim that Petitioner was penalized for going to trial (Ground Two)

Petitioner claims that the Court violated his Sixth Amendment right to a trial because the Court imposed a heavier sentence in part because Petitioner went to trial and did not plead guilty. (Attachment at 5-6.) Petitioner also includes a related claim of ineffective assistance of counsel. (*Id.* at 6.)

The First Circuit addressed on appeal Petitioner's argument that the Court penalized him for his choice to go to trial. *Trinidad-Acosta*, 773 F.3d at 310 n.5. The Court held that Petitioner waived the issue:

> In the summary of the argument section of his brief, Trinidad briefly alleges that his sentence constitutes a punishment for going to trial, since another co-conspirator whom he asserts was similar in "level" to him received an 84-month sentence. Although Trinidad does not identify the "similar in level co-conspirator," we must note that many of Trinidad's co-conspirators received downward departures for substantial assistance to the government and that Jacob García, who received an 84-month sentence, was one of them. Cooperation with the government is a legitimate basis for a disparity in sentence. *United States v. Vázquez–Rivera,* 470 F.3d 443, 449 (1st Cir. 2006). In any event, Trinidad did not develop this argument in his brief and, therefore, it is waived. *See United States v. Martínez,* 762 F.3d 127, 132 n. 2 (1st Cir. 2014) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (alteration in original) (quoting *United States v. Zannino,* 895 F.2d 1, 17 (1st. Cir. 1990))).

*Id.* Petitioner may not pursue by collateral action relief the First Circuit denied on appeal. *See Frady*, 456 U.S. at 165. Petitioner, therefore, cannot prevail on his claim that the Court improperly imposed the sentence in part as a punishment for his decision to go to trial.

Petitioner's ineffective assistance claim (Attachment at 6) also fails. Petitioner included with his motion a letter that he alleges counsel sent him regarding counsel's recollection of the plea negotiations. (*Id.* at 6; Letter, ECF No. 880-3.) The letter reads in relevant part:

> It is my recollection that before we started trial you were given an opportunity by the prosecutor to plead guilty and cooperate against Mr. Cogswell, and if you had done so you would have earned acceptance of responsibility credit and potentially cooperation credit as well. It is my recollection that we did a very rough calculation in the courthouse, and, if you had taken this step, you may have potentially gotten out in 5-7 years. This was the extent of the plea discussions. You refused this course of action and elected to proceed to trial.

(Letter at 1.) Petitioner also alleges counsel informed him that the Government would offer a plea with a recommended sentence of eight to ten years. (Attachment at 6.) The fact that Petitioner received a sentence that was longer than it might have been had Petitioner pled guilty does not

7

amount to ineffective assistance of counsel, because "[c]ooperation with the government is a legitimate basis for a disparity in sentence." *Trinidad-Acosta*, 773 F.3d at 310 n.5 (citing *Vázquez–Rivera,* 470 F.3d at 449). In other words, the fact that the plea negotiations were unsuccessful because Petitioner chose not to plea and cooperate is not a basis for a successful ineffective assistance claim.

### 2. Claim regarding perjured testimony (Ground One)

Petitioner alleges that counsel was ineffective for counsel's failure adequately to investigate and impeach witness Robert Jordan at trial. (Attachment at 4-5.) Petitioner argues that he was prejudiced because the witness's testimony "was crucial regarding the drug amount attributed to [P]etitioner." (Attachment at 4.)

It is undisputed that the witness gave testimony that was inaccurate; the Government represents (1) that it first became aware of the witness's "lack of candor" when the Probation Office issued its second revised presentence investigation report on the witness in April 2014 (Response at 8.); (2) that the Government sent a letter to counsel for Petitioner in August 2014 regarding the discrepancies in the witness's testimony (*Id.*); and (3) that the witness minimized his use of drugs, denied that he had been treated for mental illness when he had been treated briefly, exaggerated facts about his employment, misstated facts about his military discharge, and exaggerated facts regarding an abduction of the witness during the drug conspiracy. (*Id.* at 9.) The Government notes that Petitioner's counsel established on cross-examination that the witness exaggerated facts regarding the abduction. (*Id.*; Trial Tr. II at 101-02.)

At sentencing, the Court found that the witness's testimony was credible for purposes of establishing that Petitioner's role in the conspiracy started "as late as August 2010." (Sentencing Tr. at 30.) The Court determined the end date of the conspiracy and the drug amount based on

other evidence.  (*Id.* at 30-31.)  The Court concluded that from September 2010 through October 2011, the drug quantity involved was 4.9 kilograms.  (*Id.* at 31.)

Petitioner contends that the witness's testimony about drug amounts prejudiced Petitioner. (Reply, ECF No. 888 at 2.)  Petitioner also argues that had counsel conducted a more thorough investigation, counsel's cross-examination would have been more effective, and the result would have affected the outcome of the trial.  (*Id.*)  Petitioner thus essentially argues that Petitioner might not have been found guilty at trial, or the Court might not have held him responsible for as great a drug amount at sentencing, if counsel had uncovered before trial the inaccuracies that the Probation Office later discovered.  (Attachment at 4; Reply at 2.)

Petitioner fails to explain how or why the information would have generated a different result at trial.  (*Id.*)  Indeed, the inaccuracies in the witness's testimony related to matters collateral to the charges against Petitioner.  Similarly, Petitioner has failed to show that prejudice resulted from the Court's reliance on the witness's testimony at sentencing, because the inaccuracies in the witness's testimony do not relate to the start date of Petitioner's involvement in the conspiracy. Furthermore, to the extent that there may be other corroborating evidence of the date when Petitioner's role in the conspiracy started, the Court may consider that evidence in its determination of the issue of prejudice.  *See McGill*, 11 F.3d at 225.

Plaintiff thus has failed to demonstrate prejudice.  Just as importantly, the record lacks any evidence of deficient performance by counsel, as there is nothing to suggest information regarding the inaccuracies was available to counsel.  The fact that the inaccuracies were only discovered by the government after Petitioner's trial and on the second presentence report in connection with the witness's case suggests the information was not known by either party at the time of the trial.  In

short, Petitioner has not demonstrated a basis for a finding of substandard performance or prejudice.

### 3. Claim that the evidence was insufficient (Ground Four)

Petitioner contends that the evidence of possession of a firearm in furtherance of a drug trafficking crime is insufficient. (Attachment at 8.) The claim is procedurally defaulted, as Petitioner did not raise it on appeal. Petitioner, therefore, must demonstrate both cause for the default and prejudice as a result of the default. *See Berthoff*, 308 F.3d at 127-28.

The First Circuit has held:

> For a conviction under § 924(c)(1)(A), "the government must prove that the defendant (1) committed a drug trafficking crime; (2) knowingly possessed a firearm; and (3) possessed the firearm in furtherance of the drug trafficking crime." *United States v. Vázquez–Castro,* 640 F.3d 19, 25 (1st Cir. 2011). We have noted an important caveat to the second and third prongs of this analysis: "[u]nder *Pinkerton v. United States,* [328 U.S. 640] (1946), the defendant does not need to have carried the gun himself to be liable under § 924(c)." *United States v. Flecha-Maldonado,* 373 F.3d 170, 179 (1st Cir. 2004).

*United States v. Rodríguez*, 735 F.3d 1, 7 (1st Cir. 2013).

A cooperating witness testified at trial that she was addicted to crack cocaine and purchased it from Petitioner. (Trial Tr. V, ECF No. 596 at 30, 32.) The witness testified that she purchased a Ruger P95 for Petitioner, that she paid for it with money Petitioner and his girlfriend gave her, and that she gave the gun to Petitioner on the same day as the purchase; in return, Petitioner gave her cocaine. (Trial Tr. II, ECF No. 593 at 3, 17; Trial Tr. V at 36-42.)[2] The gun the witness purchased was seized in Petitioner's apartment; it was found in a locked safe that also contained crack cocaine. (Trial Tr. IV, ECF No. 595 at 124; Trial Tr. V at 123-25, 151-53.)

---

[2] The witness at first testified that the gun she purchased for Petitioner was a Taurus pistol, but upon further questioning, she testified that she purchased a Ruger P95 for Petitioner, and she purchased a Taurus pistol for someone else. (Trial Tr. V, ECF No. 596 at 39, 41-42.)

10

The evidence is sufficient to support the finding in this case. The First Circuit has held that "'possession of a firearm to protect drugs or sales proceeds' is sufficient to establish the nexus between the firearm and the drug crime.'" *Rodríguez*, 735 F.3d at 8 (quoting *United States v. Marin*, 523 F.3d 24, 27 (1st Cir. 2008)). It is reasonable to infer that the gun was there to protect the drugs. *See Musacchio v. United States*, --- U.S. ---, ---, 136 S. Ct. 709, 715 (2016) (noting that, on a challenge to the sufficiency of the evidence, the court reviews the evidence "in the light most favorable to the prosecution," and it is "the jury's role 'to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts'") (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Because Petitioner's underlying claim would have failed on the merits, Petitioner cannot establish prejudice, and counsel was not ineffective for failure to make a meritless argument. *See Tse*, 290 F.3d at 465.

### 4. Claim regarding the sentence (Ground Three)

Petitioner argues that counsel provided ineffective assistance because counsel failed to argue for a greater downward departure based on Petitioner's status as a deportable alien. (Attachment at 7.) He argues that he was prejudiced because, given his status as an alien, it was less likely that he would receive at least part of the sentence as home confinement. (*Id.*)

Petitioner's claim is procedurally defaulted because he did not raise it on appeal. Rather, Petitioner only argued on appeal that the length of the sentence was unreasonable because Petitioner had a low-level role in the conspiracy. (Petitioner's Appellate Brief at 25-26.) Petitioner, therefore, must demonstrate both cause for the default and prejudice as a result of the default. *See Berthoff*, 308 F.3d at 127-28.

In support of his argument on the merits, Petitioner cites 18 U.S.C. § 3624(c), which concerns prerelease custody and provides in pertinent part:

> **(1)   In general.**--The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.
>
> **(2)   Home confinement authority.**--The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.

The First Circuit has addressed, but apparently has not decided, the specific issue whether ineligibility for home confinement due to deportable alien status may justify a downward departure; in *United States v. Bamdele*, 141 F.3d 1150 (1st Cir. 1998) (per curiam) (unpublished) the Court noted:

> The more interesting issue in the case, which we need not decide on the merits, is appellants' claim that a downward departure was appropriate because of their status as aliens. 18 U.S.C. § 3624(c) instructs the Bureau of Prisons, "to the extent practicable," to move prisoners from prisons into transitional detention, like halfway houses, during the last tenth of their sentences. Under Bureau of Prisons policy, this arrangement (we are told) is not available to convicted aliens. Therefore, the appellants reason, district courts should be allowed to reduce by ten percent the length of aliens' sentences.
> . . .
> We are satisfied that the district court refused to exercise its discretion to depart, and we reserve for another time the question whether such a departure would ever be permitted.

*Id.* (citations omitted).

Although the First Circuit has not decided the specific issue, the Court has held that, absent extraordinary circumstances, a more lenient sentence may not be granted simply because Petitioner will likely be deported after serving the sentence. *See United States v. Maldonado*, 242 F.3d 1, 4 (1st Cir. 2001).

> In short, a deportable alien who commits a crime is still within the "heartland" of the guidelines, absent something more. *See United States v. Garay,* 235 F.3d 230, 233-34 (5th Cir. 2000); *United States v. Farouil,* 124 F.3d 838, 847 (7th Cir. 1997). If deportability, expense, or some combination of the two justifies a departure, it would have to be based on case-specific findings that made the case unusual. *Cf. United States v. Wong,* 127 F.3d 725, 728 (8th Cir. 1997). Under *Koon v. United States,* [518 U.S. 81, 96] (1996), the Sentencing Commission's silence might give the district court latitude in the extraordinary case; but the common facts of a long sentence and likely deportation are not by themselves extraordinary. *Accord United States v. Tejeda,* 146 F.3d 84, 88 (2d Cir. 1998) (per curiam). And that is all that was present here.

*Id.* at 5.

Petitioner's situation is not extraordinary; on the contrary, if, as he alleges, he is not eligible for home confinement under section 3624(c) due to his status as a deportable alien, his ineligibility is usual and routine and does not, in itself, justify a downward departure under *Maldonado*. Because Petitioner's underlying claim would have failed on the merits, Petitioner cannot establish prejudice, and counsel was not ineffective for failure to make a meritless argument. *See Tse*, 290 F.3d at 465.

### III.    CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted under Rule 8 of the Rules Governing Section 2255 Cases. In addition, I recommend that the Court deny Petitioner's motion for habeas relief under 28 U.S.C. § 2255. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

### NOTICE

> A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served

  with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

   Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

            <u>/s/ John C. Nivison</u>
            U.S. Magistrate Judge

Dated this 30th day of September, 2016.